O’Connell, J.
The plaintiff sues to recover the sum of $4,604.68, a balance remaining in the hands of Joseph Kamp, and which came into the hands of the defendant as part of Joseph Kamp’s estate at the time of his death.
This balance was the remainder of a larger sum, the accumulation of an investment made by Schneider and the decedent, Joseph Kamp, all but this $4,604.68 having been paid to Schneider by Kamp during his lifetime.
To quote the language of the petition, this investment and accumulation were the proceeds “of an agreement * * * to operate what is known as ‘ keeping a book on horse races, ’ which is a method of gambling upon the result of horse racing; under said agreement the said Kamp and the plaintiff were to furnish each a' certain amount of money to be known as the bank *366 roll, which was to be left by the said parties and to be used in defraying the expenses of said business and paying such losses as might be incurred; under said agreement bets were to be made by said Kamp, with persons other than the plaintiff «= * * and progts of gai¿i business, if any, were to be divided between the said Kamp and the plaintiff.”
Our Supreme Court, in Insurance Co. v. Hull, 51 Ohio St., 270, 277, says:
“It is not disputed that a contract founded upon a consideration which, in whole or in part-, is illegal, immoral, or against public policy is void,-and will not be enforced at the instance of any party to it. ” - ■
This contract between Kamp and Schneider falls within the rule here laid down, and Schneider could not have recovered this balance from Kamp.
I am of the opinion that Schneider’s position is no stronger against Kamp’s administrator than it was against Kamp himself, and that this case comes within the reasoning of our Supreme Court in the line of those cases decided, as was the ease of Insurance Co. v. Hull, supra, rather than within the line of those cases decided under the. facts and reasoning as adjudicated in the case of Norton v. Blinn, 39 Ohio St., 145.
• In the latter case an agent appropriated the money used by his principals in the furtherance of an illegal contract. At page 148, Judge Mcllvaine says:
“While it has ever been the policy of the law to leave parties to dn illegal transaction where it finds them by refusing relief to either in respect thereto, it has, on the other haúd, never regarded property or money employed therein or produced thereby as common plunder to be seized or retained by others in no way interested in such business. ’ ’
And in a later case, that of Kahn v. Walton, 46 Ohio St., 195, our Supreme Court quotes approvingly the following'opin-' ion from a decision by Lord Mansfield, page 20?: .
“No court will lend its aid to a man who founds his cause of ai^ion upon'an immoral or illegaTact. If from the plaintiff’s *367 own stating, or otherwise, the cause of action appears to arise ex turpi causa, on the transgression of a positive law of this country, the court say, he has no right to be assisted. It is upon that ground the court acts; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. ”
And in the case of Kahn v. Walton, supra, the court refused to lend its aid to a party who had suffered pecuniarily through his active participation in an illegal transaction. It is true Kahn v. Walton was an equitable action, while the case at bar is an action at law. But it can readily be seen, front a study of that case, that the underlying principle is the same whether the action be one at law or in equity, for on page 214 the court says:
‘ ‘ The test for determining when the objection that the parties are in pari delicto can be sustained, is whether the plaintiff can make out his ease otherwise than through the medium and by the aid of the illegal transaction to which he was himself a party; and when applied to this case, is conclusively against the plaintiff. He asserts that he knowingly entered into an unlaAvful engagement; one contrary to good morals and against public policy.”
In fact, in the case of Hooker v. De Palos, 28 Ohio St., 251, purely an action at law, we find the following in the opinion of the court, at page 261:
“The maxim, ‘Ex turpi causa, non oritur actio’ is an old and familiar one, resting on the clearest principles of public policy, and'never to be ignored. In accordance with this maxim, nothing is better settled than that, in regard to contracts which are entered into for fraudulent or illegal purposes, the law will aid neither party to enforce them whilst they remain executory either in whole or in part, nor when executed will it aid either party to place himself in statu quo by a rescission, but will, in both cases, leave the parties where it finds them. ’ ’
Where a plaintiff is conceded a right to recover money involved in a gambling or other immoral transaction, it is because such right is conferred upon him by statute. The modern tendency of courts is to adhere to the doctrine as expressed in Story, Eq. Jurisp., Section 28, to-wit:
Rogers Wright, for plaintiff.
Michael G. Heintz, contra.
“The modern doctrine.has adopted a more severely just and probably politic .moral rule, which is to leave the parties where' it finds them, giving no relief and no countenance to claims of this kind.”
The same principle is expressed by the Supreme Court of Massachusetts, in the case of Atwood v. Fisk, 101 Mass., 363, where it says:
“The suppression of illegal contracts is far more likely in general to be accomplished by leaving the parties without remedy against each other. And so the modern doctrine is established that relief is not granted where both parties are in pari delicto.”
Our Supreme Court, in cases such as the one at bar (and I-have decided it solely in accordance with Ohio decisions), seems to have placed upon the plaintiffs the burden not only of proving their cases, but the further burden of proving a right to appeal to a court.
Under the facts stated in his petition, the plaintiff has shown no such right, and, in my opinion, the demurrer should be sustained.

 The subjoined memorandum opinion by Swing, J., was filed in the circuit court in this case:
“Plaintiff’s action was to recover a share of profits in a gambling business, which business had not been financially settled. Such an action can not be maintained, for it would in effect be enforcing a gambling contract, and in such matters Courts will leave the parties where they have placed themselves. The case does not come within the principle decided in 39 O. S., 145; 2 Wall., 70; Shafer v. Kraft, Court Index, February 4, 1902. The fact that the defendant is administrator does' not change the nature of the action. Judgment affirmed.”'